IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **LeShawn James** | ) Judge: |
| | ) |
| **Plaintiff,** | ) Case No. |
| | ) |
| v. | ) |
| | ) **Jury Trial Demanded** |
| **City of Urbana, a** | ) |
| **municipal corporation,** | ) |
| **Diane Wolfe Marlin,** | ) |
| **in her individual capacity,** | ) |
| **Demond Dade, Lee Buxton,** | ) |
| **Fred Westhoff, Tal Prendergast** | ) |
| | |
| **Defendants.** | |

## COMPLAINT

**NOW COMES** LeShawn James ("Plaintiff") through his counsel, Jerome M. Davis, Esq., and files this action, pursuant to 29 U.S.C. §2601, *et seq.* Count I for interference with Plaintiff's exercise of his rights under the Family Medical Leave Act of 1993 ("FMLA"); 29 U.S.C. §2601, *et seq.*; Count II retaliation for exercise of his rights under the FMLA; Count III 820 ILCS 305/4(h) interference with Plaintiff's exercise of his rights under the Illinois Workers' Compensation Act ("IWCA"); Count IV 820 ILCS 305/4(h) retaliation for exercise of his rights under IWCA; and Count V 42 U.S.C. §1983 racial discrimination against Defendants City of Urbana, Mayor Diane Wolfe Marlin, in her individual capacity, Demond Dade, Lee Buxton, Fred Westhoff, and Tal Prendergast (collectively "Defendants"), and respectfully states and alleges the following in support hereof:

## NATURE OF THE CASE

1. In 2019, at the age of 36, Plaintiff, an African American, joined the Urbana Fire Department ("Department"). He successfully completed all testing requirements and a one-year probationary period to become a full-time firefighter. On April 24, 2022, Plaintiff suffered an

Atrial Fibrillation ("AF") with Rapid Ventricular Rate ("RVR") emergency after returning home from a 96-hour shift. Consistent with the department's unwritten macho code, Plaintiff was back at work full-time on April 29, 2022. On June 11, 2022, Plaintiff suffered another AF with RVR emergency while enroute to a call. Plaintiff treated the second incident as a wake-up call and subsequently exhausted his sick leave and personal time to recover. When his sick time was exhausted, he applied for and was approved for a 12-week FMLA leave on July 1, 2022.

2. However, within days of approving his leave, Plaintiff's supervisor, who is Caucasian, began calling him on an almost daily basis questioning when he would return to work, stating that the department was short-handed and questioning why he needed an extended leave when other firefighters with the same injury were able to return to work. Bowing to the pressure and fearing he might lose his job, Plaintiff agreed to ask his physician to approve his return to work with a light duty requirement. Agreeing to cut-short his FMLA leave was not enough for Defendants. They wanted him to return full-time; and when he failed to speed up his return to active duty, as he had previously done, they retaliated against him for filing his FMLA and IWCA claims by bringing sham disciplinary proceedings to fire him. White firefighters who have suffered the same injury as Plaintiff have not been subjected to this treatment.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the claims arising under federal law (Counts I- II) and the U.S. Constitution (Count V) pursuant to 28 U.S.C. §1331. It has supplemental jurisdiction over the state law claims (Counts III-IV) under 28 U.S.C. §1367.

4. All of events giving rise to this action occurred in this District. Therefore, venue lies here pursuant to 28 U.S.C. § 1391(b)(2).

# PARTIES

5. Plaintiff LeShawn James is a citizen of the United States who resides in Champaign County, Illinois.

6. Defendant City of Urbana is a municipal corporation organized under the laws of the State of Illinois conducting business and operating the Urbana Fire Department under the laws of the State of Illinois.

7. Defendant Diane Wolfe Marlin is the current Mayor of Urbana and chief executive with final policy making authority for the city and fire department.

8. Defendant Demond Dade is the Chief of the Urbana Fire Department.

9. Defendant Lee Buxton is a former Acting Battalion Chief for the Urbana Fire Department.

10. Defendant Fred Westhoff is a former Acting Battalion Chief for the Urban Fire Department.

11. Defendant Tal Prendergast is a Lieutenant for the Urbana Fire Department.

12. Defendants were "employers" of Plaintiff within the meaning of 29 U.S.C. §2911(4)(A-B) as the City of Urbana was engaged in commerce and activities employing more that 50 employees in the preceding calendar year and operated a public agency--the Urbana Fire Department--that always employed the individual Defendants and Plaintiff during the period relevant to this suit.

## STATEMENT OF FACTS

13. Plaintiff is a 39-year-old African American residing in Champaign County, Illinois.

14. On September 3, 2019, he was hired as a firefighter by the Department.

15. He underwent rigorous physical and mental training and a 1-year probationary period before he became a full-time firefighter.

16. On April 24, 2022, Plaintiff suffered an Atrial Fibrillation ("AF") with Rapid Ventricular Rate ("RVR") emergency after returning home from a 96-hour shift. He was rushed to the emergency room at OSF St. Mary Medical Center and received a Transesophageal Echocardiogram (TEE) under Anesthesia and subsequent Cardioversion. After the procedure, he was placed on blood thinners for 7 days.

17. Despite the fact that he could have died, based on the Department's unwritten macho code Plaintiff was back at work full-time on April 29, 2022.

18. On May 10, 2022, Plaintiff suffered another AF with RVR emergency, and his physician had to order emergency medication to treat his condition.

19. On May 17, 2022, Plaintiff's attorney filed a claim with the Illinois Workers' Compensation Commission.

20. Although the Department was aware of the claim, it did not file a response to the claim in the time required by law.

21. On June 10, 2022, Plaintiff's supervisor Lieutenant Dilly noted that Plaintiff was confused and disoriented while driving to a call.

22. At 2:30 a.m. the next morning, Plaintiff was awakened for an emergency call and while enroute his heart began to race, and he became disoriented and confused. Lieutenant Dilly

observed his condition and immediately took Plaintiff to the emergency room where an electrocardiogram confirmed that he had suffered another AF with RVR emergency.

23. Defendant Westhoff sat with Plaintiff while at the emergency room and subsequently filed an injury report with the Department.

24. On June 15, 2022, Plaintiff's attorney filed another claim with the Illinois Workers' Compensation Commission.

25. Realizing he was grievously ill; Plaintiff exhausted all his sick/personal time as he attempted to recover.

26. Upon exhausting his sick/personal time, Plaintiff sought a medical leave under the FMLA.

27. On July 1, 2022, the City of Urbana approved Plaintiff's 12-week FMLA leave.

## Count I

(FMLA Interference All Defendants)

28. Plaintiff realleges and incorporates by reference paragraphs 1-27 above as if fully set forth herein.

29. Plaintiff was and continues to be eligible for FMLA leave under 29 U.S.C. §2611(2)(A) in that he was employed for at least 12-months and worked at least 1,250 hours for Defendants during the 12-month period preceding his leave requests.

30. Plaintiff was eligible for FMLA leave under 29 U.S.C. §2612(a)(1)(D) because of a serious health condition that made him unable to perform his job duties. Plaintiff was entitled to 12-weeks unpaid leave because of his health condition.

31. Plaintiff was granted/approved for a 12-week FMLA leave by the City of Urbana.

32. Plaintiff provided Defendants with the necessary information regarding his medical condition.

33. Defendants approved Plaintiff's unpaid leave for up to 12-weeks on July 1, 2022.

34. Even before he went on FMLA leave, Plaintiff began receiving incessant calls on an almost daily bases asking when he would return to work.

35. Defendant Acting Battalion Chief Fred Westhoff disregarded Plaintiff's authorized 12-week FMLA and continued to harangue him to return to work, even if he could only perform light duty.

36. Plaintiff was told that the Department was short-handed because of the number of firefighters on leave or disability. Therefore, he was pressured to return to work, even if he was only able to perform light duties.

37. Plaintiff was very concerned about his health. He experienced multiple episodes of AF with RVR, an irregular heart rhythm with dangerous elevation in heart rate that could cause a stroke, within the last several months.

38. Defendant Westhoff questioned Plaintiff about why he was not returning to work when other firefighters that experienced AF with RVR emergencies had been able to quickly return.

39. Plaintiff was concerned that if he did not return to work, he might lose his job and his status among his peers would be damaged by being labeled as shirking his responsibility to the team.

40. Based on this pressure, Plaintiff agreed to seek authorization from his physician to return to work with light-duty restrictions.

41. On July 8, 2022, Plaintiff submitted a letter from his physician authorizing his return to work with light duty restrictions.

42. Within days, Defendant Westhoff demanded that Plaintiff contact his physician to clarify the restrictions, so he could immediately return to work.

43. Plaintiff received multiple calls pressuring him to get an additional letter from his physician to accelerate his return to work. He was told he needed to move faster to get the approval to resume work.

44. Plaintiff informed Westhoff that his doctor was on vacation, and he could not get the letter until he returned. However, Westhoff demanded to talk with the physician's office to determine if someone else in his office could provide the authorization letter.

45. After multiple calls to accelerate Plaintiff's return to work, he finally obtained a second letter from his physician on July 22, 2022, authorizing his return to work with light-duty restrictions on July 25, 2022. Plaintiff was scheduled for a heart ablation procedure in October, which was the earliest date his physician could perform the procedure. Defendant Westhoff demanded that he talk to another physician to see if the procedure could be performed sooner.

46. Plaintiff felt severe pressure to resume remote work as soon as possible so he scheduled the ablation with another physician for August 29, 2022. Defendants only allowed one-day for Plaintiff to recover before he was required to resume a 40-hour weekly light-duty schedule.

47. After the ablation surgery, Plaintiff was required to work a 40-hour per week light duty schedule through September and October because he was on blood thinners that prevented him from working as a full-time firefighter.

48. Defendants City of Urbana and Diane Wolfe Marlin are responsible for the policy that resulted in Defendants Dade, Westhoff and Buxton interfering with Plaintiff's rights under FMLA by restricting his right to take an unpaid 12-week FMLA leave.

### Count II

(FMLA Retaliation All Defendants)

49. Plaintiff realleges and incorporates by reference paragraphs 1-27 above as if fully set forth herein.

50. Plaintiff was and continues to be eligible for FMLA leave under 29 U.S.C. §2611(2)(A) in that he was employed for at least 12-months and worked at least 1,250 hours for Defendants during the 12-month period preceding his leave requests.

51. Plaintiff was eligible for FMLA leave under 29 U.S.C. §2612(a)(1)(D) because of a serious health condition that made him unable to perform his job duties. Plaintiff was entitled to 12-weeks unpaid leave because of his health condition.

52. Plaintiff was granted/approved for a 12-week FMLA leave by the City of Urbana.

53. Plaintiff provided Defendants with the necessary information regarding his medical condition.

54. Defendants approved Plaintiff's 12-week unpaid leave on July 1, 2022.

55. On August 4, 2022, Defendant Buxton issued a Disciplinary Action Letter of Reprimand stating in relevant part that: On May 23, 2022, Plaintiff had agreed to cover another firefighter's shift on July 23, 2022; "On June 11, 2022, Firefighter James began using sick leave. On July 4, 2022, Firefighter James ran out of sick leave benefit time and began unpaid Family medical Leave… Firefighter James failed to report for duty on July 23, 2022, nor did he find someone to cover his commitment."

56. Defendant Buxton alleged that Plaintiff violated Department policy that required him to find someone else to cover the duty he agreed to work.

57. Buxton knew Plaintiff went on FMLA leave on July 1, 2022, and that he could not cover the duty because he was on blood thinners as part of his recovery from the AF with RVR emergency he suffered on June 11, 2022. Yet, he issued the disciplinary reprimand.

58. Further, Buxton threated to designate Plaintiff as absent without leave if he did not show up for duty on July 23, 2022. To avoid this, Plaintiff contacted Defendant Westhoff and asked him to get coverage for the July 23 duty. Westhoff responded on July 22, 2022, by telling Plaintiff that he would take care of matter and Plaintiff would not be disciplined.

59. But Plaintiff was disciplined anyway.

60. The Disciplinary Action violated the Department's own policy and the Collective Bargaining Agreement, which state that if a firefighter suffers a work-related injury after accepting an exchange duty assignment that would prevent him from covering the shift, "Management shall be responsible for finding coverage for that shift if the duty injury occurs within 30 days preceding the approved [duty exchange].

61. Defendant Buxton's reprimand makes clear that he knew Plaintiff was injured on duty on June 11, 2022, which was more than 30-days before the July 23, 2022, duty exchange.

62. On August 26, 2022, Defendants Buxton and Westhoff summoned Plaintiff to a meeting and gave him a second Disciplinary Action Letter of Reprimand that was dated June 15, 2022. This letter charged that plaintiff had exhibited poor driving skills and lack of "street familiarity." The charges were based on an alleged incident from April 11, 2022, and the June 10, 2022, incident where Plaintiff became confused, disoriented several hours before he suffered a near fatal AF with RVR emergency.

63. Plaintiff was informed that he would be suspended from "any and all [job] upgrade privileges for (3) months" after he returned to full-time status and that his driving privileges

would also be suspended for 3 months. He was also ordered to complete mandatory retraining "over the next (3) three months" upon his return to active duty.

64. Thus, the harassment continued after Plaintiff returned to full duty in November 2022. In January 2023, he was summoned to take a written test in the lunchroom of the fire station while his colleagues ate their lunch and loudly socialized. This was humiliating, embarrassing, and designed to assure that Plaintiff would fail.

65. In March 2023, Plaintiff was suspended for 1-day without pay for failing the written test. Plaintiff was forced to wear his formal dress uniform for this meeting. The officers accompanying him to the meeting were also dressed in formal attire. As a result, Plaintiff suffered the humiliation and embarrassment of having other firefighters constantly asking what was going on and being told that he was there for a disciplinary proceeding.

66. On March 22, 2023, Defendant Dade placed Plaintiff on an immediate suspension with pay pending an investigation of several alleged incidents that supposedly occurred during the prior two months. Plaintiff received a notice that the formal investigation could result in suspension or termination. He was further prohibited from participating in all Department activities and relieved of his duties.

67. Plaintiff avers that the litany of alleged charges underlaying his suspension are a pretext for his termination because he exercised his rights under the FMLA.

68. The charges are based on statements made by Defendant Prendergast. He has mischaracterized unsubstantiated events that are alleged to have occured over a period of months. Moreover, Plaintiff was not formally disciplined for these alleged incidents until after he went on FMLA leave. Plaintiff is being subjected to discipline for minor infractions that do not normally result in discipline or termination.

69. On information and belief, there are multiple firefighters that suffered an AF with RVR emergency while working for the Department, but they were not subjected to retaliatory disciplinary actions because they did not take extended FMLA leaves.

70. Defendants City of Urbana and Diane Wolfe Marlin are responsible for the policy that resulted in Defendants Dade, Westhoff, Buxton, and Prendergast retaliating against Plaintiff for exercising rights under the FMLA.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. All wages, benefits, or other compensation lost by Plaintiff by reason of the Family Medical Leave Act violations, including but not limited to back pay, front pay, and pre-judgment interest;

B. Actual monetary losses sustained by Plaintiff as a direct result of Defendants' Family Medical Leave Act violations;

C. Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), at the prevailing rate from the date Plaintiff was retaliated against to the date of judgment, in an additional amount equal to the award of damages, including interest;

D. Equitable relief including restoration of job assignments and promotions;

E. A permanent injunction enjoining Defendants from engaging in the practices complained of herein;

F. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Family Medical Leave Act;

G. A declaratory judgment that Defendants' actions violate the Family Medical Leave Act;

H. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

I. An award of reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 2617(a)(3); and

J. Any other relief tailored to the harm suffered.

## Count III

(IWCA Interference All Defendants)

71. Plaintiff realleges and incorporates by reference paragraphs 1-24 and 34-47 above as if fully set forth herein.

72. Plaintiff filed claims under the IWCA in May and June of 2022 related to the AF with RVR injuries of April 24, 2022, and the June 11, 2022, respectively.

73. Defendants Buxton and Westhoff were aware that he filed these claims and that they asserted a permanent disability.

74. On July 25, 2022, the administrator for the City's workers' compensation program sent a letter denying Plaintiff's workers' comp claim and stating that the injuries "did not arise out of or in the course of" Plaintiff's employment.

75. 820 ILCS 305/4(h) makes it unlawful to interfere with the exercise of rights under the IWCA.

76. Defendants pressured and harassed Plaintiff to force him to return to work to perform light duty and, thereby, interfered with his rights under the IWCA by obviating his ability to pursue a permanent disability claim. As a result, Defendants have stalled Plaintiff's May and June 2022 claims; they have not even bothered to file an appearance or response to both claims, only a blanket denial.

77. Defendants City of Urbana and Diane Wolfe Marlin are responsible for the policy that resulted in Defendants Dade, Westhoff, and Buxton interfering with Plaintiff's rights under IWCA.

## Count IV

(IWCA Retaliation All Defendants)

78. Plaintiff realleges and incorporates by reference paragraphs 1-24, 55-66, and 68 above as if fully set forth herein.

79. On information and belief, there are multiple firefighters that suffered AF with RVR emergency while working for the Department, but they were not subjected to retaliatory disciplinary actions because they quickly returned to full duty and, thus, reduced the amount of their IWCA claims.

80. Defendants City of Urbana and Diane Wolfe Marlin are responsible for the policy that resulted in Defendants Dade, Westhoff, Buxton, and Prendergast retaliating against Plaintiff for exercising rights under the IWCA.

81. As a result of Defendants actions, Plaintiff has suffered severe emotional distress and mental anguish. Plaintiff has also not received compensation to which he is entitled under the IWCA. Further, he is entitled to loss benefits and wages and potential front pay for retaliatory discharge. Individual Defendants acted willfully, maliciously and/or in reckless disregard for Plaintiff's right to be free from retaliation for exercising his rights under the IWCA.

**WHEREFORE**, Plaintiff respectfully request the entry of a compensatory judgment for an amount to be determined at trial, punitive damages, attorney fees, costs, and such equitable relief the Court deems appropriate.

### Count V

( 42 U.S.C. §1983 All Defendants Except Dade)

82. Plaintiff realleges and incorporates by reference paragraphs 3-15, 21-22 above as if fully set forth herein.

83. The City of Urbana has an African American population of approximately 17%.

84. The Urbana Fire Department does not now, nor has it ever had a proportional representation of African American employees among its ranks.

85. Only 5 African Americans, including Defendant Dade, are currently employed by the Department, which has over 60 employees.

86. The officers and leadership of the Department is now and always has been predominately Caucasian; the sole exception is Defendant Dade who was recently elevated from the position of Deputy Chief to Fire Chief.

86. All the individual Defendants in this case, with exception of Dade, are Caucasian.

87. African American firefighters have been subject to excessive disciplinary actions while Caucasian firefighters have not been disciplined for the same conduct.

88. For example, Plaintiff is accused of "driving aggressively" and was forced to undergo additional training and written testing, but a Caucasian firefighter who was involved in an accident that resulted in substantial damage to the fire apparatus was not required to take additional training, and, on information and belief, was not disciplined.

89. The same Caucasian firefighter participated in a driving training exercise with Plaintiff and was observed driving above the speed limit. He knocked over 2 cones during the testing,

while Plaintiff only knocked over 1 cone. Yet, it is Plaintiff who is being disciplined for "driving aggressively."

90.     Defendants disciplined Plaintiff for poor navigational skills while ignoring an incident where a Caucasian firefighter went to the wrong location during an actual fire.

91.     Further, Defendants Buxton and Westhoff subjected Plaintiff to disciplinary action for an incident on June 10, 2022, when he was experiencing heart failure that later escalated into an AF with RVR emergency. No Caucasian firefighter has ever been disciplined for having an AF with RVR emergency while on the job.

92.     No Caucasian firefighter was ever disciplined while he was struggling to recover from a work-related AF with RVR emergency, nor were they forced to take additional training upon returning to work.

93.     In fact, 2 Caucasian firefighters who suffered the identical injuries were not subjected to this treatment, nor were they subject to a disciplinary termination proceeding upon returning to work.

94.     Nearly all the African American firefighters hired in the last 5 years have been subject to disciplinary actions. They have been the subject of public humiliation during staff meetings and demeaning comments, such as being called lazy and incompetent.

95.     Consequently, the African American firefighter ranked second on the firefighter's exam left the Department after 3-years because he could no longer deal with the constant harassment and phony discipline, such as when Defendant Prendergast charged him with having poor driving skills—the same Defendant that brought sham charges of poor driving skills against Plaintiff.

96.     African American firefighters have been subjected to a culture of racist tropes:  In one incident, a Caucasian firefighter "Hey guys I have a good joke: once you go black, you become a

15

single mother." This statement was made to a room full of Caucasian firefighters while Plaintiff was within the area. Defendant Prendergast later became aware of this incident, but he took no action to discipline the firefighter. In another incident in the fire station kitchen, a Caucasian firefighter blurted out that he did not understand why a news report regarding finding a noose in an elevator on the U of I campus was such a big deal.

97. Defendants Buxton, Westhoff, and Prendergast knew of this racist climate and did nothing to address it.

98. Defendants City of Urbana and Diane Wolfe Marlin have failed to investigate, supervise, train, or discipline employees that have engaged in such behavior and have failed to take action to avoid the discriminatory treatment of African American employees. Therefore, they are responsible for the policy that has caused Plaintiff's discriminatory treatment.

99. Defendants City of Urbana and Diane Wolfe Marlin have ratified the discriminatory disciplinary action taken against Plaintiff, as Defendant Marlin is the final decision-maker for all employment decisions made by City agencies.

100. Plaintiff has suffered severe emotional distress and mental anguish because of Defendants' conduct. Further, the above facts show that Defendants willfully, maliciously, or recklessly disregarded Plaintiff's constitutionally protected rights.

**WHEREFORE**, Plaintiff prays that this Court:

  A. Declares that Defendants' conduct enumerated herein is illegal and unconstitutional;

  B. Issues a permanent injunction barring Defendants from continuing to engage in discriminating against African American firefighters;

  C. Awards compensatory damages from all Defendants in an amount to be determined at trial plus statutory pre-judgment interest;

D. Awards punitive damages from Defendants Marlin, Buxton, Westhoff, and Prendergast in an amount to be determined at trial;

E. Awards reasonable attorney's fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

F. Awards such other relief as the Court deems just.

## Jury Demand

Plaintiff demands a jury trial to hear this case.

Date May 22, 2023                    Respectfully submitted,

By: /s/ Jerome M. Davis, Esq.
Jerome M. Davis, Esq.
Attorney for LeShawn James

Jerome M. Davis, Esq. (ARDC#6273828)
9024 McIntosh Court
Lakewood, Illinois 60014
847-606-6685
jeromed483@gmail.com

18